On Application for Rehearing

BEATTY, Retired Justice.
The opinion of February 12, 1999, is withdrawn, and the following is substituted therefor:
In June 1992, Amy Brown Asaro filed a multi-count complaint against Kmart, Inc., and Billie Stonecypher, a Kmart employee *514 who had worked in Kmart’s security department for 20 years handling worthless checks. The complaint alleged, among other things, that Kmart and Stonecypher were guilty of false imprisonment, fraud, and abuse of process. These claims arose after a check Asaro drew to Kmart for $231.44 was dishonored by Asaro’s bank. Asaro was subsequently prosecuted by the Etowah County district attorney’s office for negotiating a worthless instrument. See, Ala.Code 1975, § 13A-9-13.1 through -13.3. Asaro was convicted in the district court; however, on appeal to the circuit court, the criminal charge was non-prossed.
In January 1998, Asaro’s civil case was called for trial in the Jefferson County Circuit Court. The trial court overruled Kmart and Stonecypher’s motion for a judgment as a matter of law and submitted the case to the jury on the false-imprisonment, abuse-of-process, and fraud counts. The jury returned a general verdict, awarding Asaro $8,042 in compensatory damages and $10,000 in punitive damages. The trial court entered a judgment on the jury’s verdict and thereafter denied Kmart and Stonecypher’s post-judgment motions.
Kmart and Stonecypher appealed. They argue that the trial court erred by denying their motion for a judgment as a matter of law. Specifically, they contend that Asaro failed to prove the elements necessary to establish the torts of abuse of process and malicious prosecution. Kmart and Stonecypher further maintain that the trial court committed reversible error by allowing Asaro’s fraud and false-imprisonment claims to go to the jury.
On December 22, 1990, Asaro drew a check to Kmart in the amount of $231.44. At trial, Asaro admitted that on December 21, 1990, her husband had received a paycheck for $522, that he had deposited only $46 from that paycheck into them checking account, and that her husband’s next paycheck would have been due two weeks later. Asaro also admitted that when she issued this check to Kmart she would not have had sufficient funds in her account to cover the check until she could deposit her husband’s next pay check.
The bank dishonored Asaro’s check because Asaro’s account did not contain sufficient funds to cover it. Both Asaro and her husband testified that the bank had notified them that the check had been dishonored. Asaro denied receiving notice from Kmart that the check had been dishonored, although Kmart asserted that it sent such a notice to Asaro by certified mail, and it introduced into evidence.a copy of an envelope with the same address as that printed on Asaro’s check. The envelope showed that the notice was returned to Kmart as “unclaimed.”
In mid-January 1991, Asaro and her husband consulted Michael French, an attorney, about filing a bankruptcy petition. Asaro told French about the dishonored check to Kmart and inquired about including the check in the bankruptcy proceedings. French explained to Asaro that a bankruptcy proceeding does not bar or stay a criminal prosecution for a dishonored check, but that the check could be included in the bankruptcy proceeding if Kmart agreed.
Asaro’s husband testified that he contacted Kmart and “asked to speak to a manager about a bounced check.” He said he did not recall with whom he spoke, but that he gave them the name and telephone number of his attorney and asked them to contact his attorney about the dishonored check. French testified that he spoke with Billie Stonecypher at Kmart before filing the bankruptcy petition and that it was his understanding that Kmart had agreed to pursue collection of the dishonored check through the bankruptcy court rather than to pursue the criminal prosecution of Asa-ro. Stonecypher, however, testified that she never spoke with French.
On January 29, 1991, French filed a voluntary petition on behalf of Asaro and her husband under Chapter 13 of the United States Bankruptcy Code, listing Kmart *515 as a creditor in the petition. On February 4, 1991, Kmart filed with the bankruptcy court a completed proof-of-claim form, with Kmart’s “bad check recovery sheet” and the check attached. Patti Jones, Kmart’s cash-cage manager, testified that she completed the proof-of-claim form and that it was the only proof-of-claim form she had ever seen.
In March 1991, Asaro received a letter from the Etowah County district attorney’s office stating that “[a] warrant for your arrest has been issued concerning a Worthless Check.” Asaro forwarded the letter to French. French testified that after receiving this letter he contacted the district attorney’s office and was told that Kmart would need to have the warrant withdrawn. French stated that he contacted Stonecypher, who, he says, told him the issuance of the warrant was an error and that Kmart would contact the district attorney’s office. Stonecypher, of course, testified that she had never spoken with French.
In June or July 1991, Asaro was arrested at her home, on a charge of negotiating a worthless instrument. In October 1991, she was tried and convicted in the district court. She appealed to the circuit court and, in June 1997, upon motion of the State, the circuit court nol-prossed the charge and ordered Asaro to pay costs and to make restitution to Kmart in the amount of $246.44 (the -amount of the check plus a $15 service charge).
In June 1992, Asaro filed this civil action against Kmart and Stonecypher; a month later, the bankruptcy court dismissed the Asaros’ Chapter 13 case because they were unable to make the agreed-upon payments. In September 1992, French sent Kmart a letter with a money order in the amount of $246.44. French testified that he took this action after the Asaros’ bankruptcy petition had been dismissed, in order to satisfy the agreement he had reached with Stone-cypher in January 1991. Kmart did not accept this money order.
Asaro testified that Kmart’s refusal to forgo criminal prosecution, as she says it had promised to do in January 1991, and her subsequent arrest and prosecution, caused her, her husband, and their young children to suffer mental anguish. Asaro also testified that she was forced to incur attorney fees ($1,250 in regard to the district court case and $1,792 on appeal to the circuit court) to defend herself against the worthless-check charge.

A. The False-imprisonment and Abuse-of-Process Claims

As we have noted, the trial court submitted to the jury the counts alleging false imprisonment, abuse of process, and fraud. Both the false-imprisonment and the abuse-of-process claims arose from the same set of circumstances — Asaro’s arrest and prosecution for negotiating a worthless instrument. In Cutts v. American United Life Ins. Co., 505 So.2d 1211, 1214 (Ala.1987), our supreme court stated:
“[The plaintiffs] complaint, if it states a claim at all, can only be an action for malicious prosecution. Malicious prosecution is an action disfavored in the law. The wrongdoing which [the plaintiff] alleges centered around the procurement of the indictment against him. Indeed, the damages he claims are for the expense, emotional suffering, and humiliation incurred in being indicted and having to defend himself. The policy disfavoring malicious prosecution claims would also disfavor bringing claims arising out of facts within the ambit of malicious prosecution but couched in other terms, especially general allegations of negligence, willfulness, or wantonness. Therefore, in the absence of any other clearly recognized theory under which [the plaintiff] could proceed, his complaint must be treated as one for malicious prosecution.
“The elements of malicious prosecution are: (1) a judicial proceeding initiated by the defendant [in the later malicious-prosecution action], (2) the lack of probable cause, (3) malice, (4) termi *516 nation in favor of the plaintiff [in the later malicious-prosecution action], and (5) damage.”
(Citations omitted; emphasis added.)
In C.C. & J., Inc. v. Hagood, 711 So.2d 947, 950-51 (Ala.1998), our supreme court stated:
“The elements of the tort of abuse of process are 1) the existence of an ulteri- or purpose, 2) a wrongful use of process, and 3) malice....
“However, [the defendant] is not liable for abuse of process simply because it prosecuted [the plaintiff] with an ulteri- or purpose. [The plaintiff] was required to further show that [the defendant] wrongfully used the criminal process against [the plaintiff]. At the outset of this analysis, it would be helpful to note the difference between an abuse of process claim, on which the verdict was based, and a malicious prosecution claim. Malicious prosecution concerns the wrongful issuance of process; abuse of process concerns the wrongful use of process after it has been issued.
[[Image here]]
“... As we have said, any question about the initiation of a judicial proceeding is encompassed in a malicious prosecution claim, not an abuse of process claim.”
(Emphasis in original; citations omitted.)
In light of the foregoing, we conclude that the trial court committed reversible error when it submitted to the jury the counts alleging false imprisonment and abuse of process. Additionally, although Asaro’s complaint did not contain a malicious-prosecution count, the facts of this case would not have supported such a claim. Asaro failed to establish the elements of a malicious-prosecution claim because the evidence clearly shows that Kmart and Stonecypher had probable cause to prosecute her for negotiating a worthless instrument.

B. The Fraud Claim

The fraud count is another matter, however, which Cutts, supra, and Hagood, supra, do not reach. Conflicting evidence was adduced on the issue of fraudulent representation. Asaro’s evidence disclosed that during her attorney’s discussion with Stonecypher regarding the worthless check, a compromise was reached by which Kmart would be satisfied with payment through bankruptcy proceedings, forgoing prosecution. And, according to Asaro’s evidence, after she had been notified by the district attorney’s office of the issuance of a warrant for her arrest, her attorney had yet another conversation with Stonecy-pher, who gave her assurance that the issuance of the warrant had been a mistake, and upon which assurance Asaro relied. Nevertheless, Asaro’s arrest ensued. From these facts a jury could have concluded that Asaro established fraud. See, §§ 6-5-101 through -104, Ala.Code 1975.
Even so, the counts of false imprisonment and abuse of process were also submitted to the jury. Thus, it is unclear whether the verdict was based on the “good” count or on the “bad” counts. Aspinwall v. Gowens, 405 So.2d 134 (Ala. 1981). Accordingly, the cause must be remanded for a new trial.
Let the judgment be reversed and the case remanded for proceedings consistent with this opinion.
The foregoing opinion was prepared by Sam A. Beatty, Retired Justice, Supreme Court of Alabama, while serving on active-duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
OPINION OF FEBRUARY 12, 1999, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; RULE 39(k) MOTION DENIED; REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES and MONROE, JJ., concur.
*517 CRAWLEY, J., dissents, with opinion.
THOMPSON, J., dissents.